# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| PATRICE SHELLMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. CV415-119 |
| CAROLYN COLVIN, | ) |
| Acting Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Alleging disability due to a host of ailments, including asthma, obesity, depression, vision loss, and sickle cell disease, plaintiff Patrice Shellman seeks judicial review of the Social Security Commissioner's denial of her application for a period of disability and Disability Insurance benefits (DIB), as well as Supplemental Security Income (SSI). Doc. 1.[1]

## I. GOVERNING STANDARDS

In social security cases, courts

---

[1] "Doc." citations use the docket and page numbers imprinted by the Court's docketing software. Those do not always line up with each paper document's printed pagination. "Tr." citations, on the other hand, use the page numbers in the bottom right corner of the administrative record, which is located on the docket at doc. 12.

review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). In response to the showing the claimant makes, the Administrative Law Judge (ALJ) applies

a five-step, "sequential" process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not go on to the next step. *Id.* § 404.1520(a)(4). At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." *Id.* § 404.1520(a)(4)(ii). At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ must then determine at step four whether the claimant has the RFC to perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant can make an adjustment to other work, considering the claimant's RFC, age,

2

education, and work experience.[1] An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a VE. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011).

*Stone v. Comm'r. of Soc. Sec. Admin.*, 596 F. App'x, 878, 879 (11th Cir. 2015) (footnotes added).

## II. BACKGROUND

Shellman, aged 42 at the time of the 2013 hearing in this case, has been pressing her disability claim for over a decade. Doc. 12-8 at 63, 64 (noting September 19, 2005 "protective filing"). At a third administrative hearing before an ALJ (prior hearings and administrative appeals to the Social Security Administration's (SSA's) Appeals Council resulted in remands for new hearings)), she testified that she has lived with her mother since 2000, has two daughters, and that all three have been dependent on her mother for support. *Id.* at

---

[1] At steps four and five, the ALJ assesses the claimant's residual functional capacity (RFC) and ability to return to her past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). RFC is what "an individual is still able to do despite the limitations caused by his or her impairments." *Id.* (citing 20 C.F.R. § 404.1545(a); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). "The ALJ makes the RFC determination based on all relevant medical and other evidence presented. In relevant part, the RFC determination is used to decide whether the claimant can adjust to other work under the fifth step." *Jones v. Comm'r of Soc. Sec.*, 603 F. App'x 813, 818 (11th Cir. 2015) (quotes and cite omitted).

66-67. Shellman took regular classes in high school "and then I went through college." Doc. 12-8 at 67. She received enough college training to test for a Licensed Practical Nurse degree but "got sick" when it came time to take the "Georgia State Test" for it. Doc. 12-8 at 106. Plaintiff has a driver's license but in February, 2013, her doctor advised her to stop driving due to recent eye surgery. *Id.* at 67. As of the hearing date, she weighed about 210 pounds (at 5' 7"), down from 260 ("[t]he doctor put me on a diet after I had my surgery."); *see also id.* at 70 ("I've probably been almost 300 because my weight can go up and down, up and down because of my nerves.").

After reviewing Shellman's earnings history, including medical difficulties (she had a leg tumor addressed after she fell at work performing home health care; she also has suffered bouts of asthma), the ALJ determined that she had "no past relevant work." *Id.* at 71-72. He then asked Shellman about "the conditions that you allege keep you from working since going back to 2005. . . ." *Id.* at 72. Plaintiff replied that she had suffered from asthma since "when I was little," *id.* at 73, and she addresses it with Prednisone, a nebulizer and

4

an inhaler. *Id.* at 74. She also has had heart problems, precipitated by a breech-baby childbirth, that have required an angioplasty, catheterizations, and a stent. *Id.* at 73. She suffered a detached retina in her right eye in 2013 and, despite surgery, she can no longer see out of it. *Id.* at 75-76. She believes she can use her left eye once she can afford to fill an eyeglass prescription. *Id.* at 76-77. Plaintiff anticipated another eye surgery in November, 2013. *Id.* at 95-96.

Shellman also has endured a leg tumor that doctors do not want to address surgically because of her heart's fragility. Doc. 12-8 at 78-79. So, about every two weeks since about 2005, "I go out to the hospital and get shots." *Id.* at 79. She uses an assistive leg brace. In addition, she relies on "crutches and I have a stick that I use." *Id.* at 93. She uses her crutches "most of the time when I go out." *Id.*

Plaintiff also has the sickle cell trait. Doc. 12-8 at 80. She takes some sort of medication "for my blood and stuff," and associates that stabilizing medication with a one-time "racing heart" episode. Doc. 12-8 at 80. Shellman also takes medication to help her "sleep because I've been so upset. *Id.* at 94. She does not sleep during the day.

"I've just been having a rough time of sleeping at all. I would just walk around and just pace, my nerves is [sic] real bad." *Id.* Plaintiff wears eye shades during the day "because the sun affects my eyes and it gives me migraines." *Id.* The same occurs with indoor lighting. *Id.*

Finally, Shellman is afflicted by depression, as further detailed below. She performs no housework or outside work, has no hobbies, rarely goes out and spends most of her day in her room with the lights off, sometimes listening to audio books. *Id.* at 87-95.

The ALJ found that Shellman's asthma, sickle cell trait with right tibial lesion, vision loss in her right eye status post detached retina, cardiomegaly, obesity, depression, and anxiety are "severe" within the meaning of 20 CFR 4094.1520(c) and 20 CFR 416.920(c). Doc. 12 at 25. But he also found that she did not have an impairment or combination of impairments that meets or medically equals one of the SSA's listed impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id.* at 26. In fact, she had the RFC to perform light work but with specific limitations which, when threaded through a hypothetical question asked of a Vocational Expert, resulted in his conclusion that

plaintiff can perform work as a bench assembler, a call out operator, and a telephone quotation clerk. *Id.* at 32. Therefore, the ALJ concluded, Shellman is not laboring under a "disability" and not entitled to collect DIB and SSI benefits. *Id.* at 32-33.

## III. ANALYSIS

The ALJ's ruling contains this pivotal passage, which is based on his review of her medical evidence and hearing testimony:

> The claimant has alleged disability since 2005. She alleges disability over the years (impairments have changed over the last 6 years) due to asthma, sickle cell, heart problems, loss of vision, and mental problems. These allegations are only partially credible and not supported by the evidence. Claimant's asthma is controlled and her lung function per pulmonary function tests was good (Ex. 9F). She had a good result from her eye surgeries in 2013 (Ex. 26F). Claimant has good cardiac function (Ex. 30F). Claimant's mental health treatment has been spotty over the years, and records show she was not taking any psychotrophic medications in 2013.

Doc. 12 at 28. He then reiterated his disbelief of Shellman's testimony:

> After careful consideration of the evidence, the undersigned feels that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Shellman's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the

7

reasons explained in this decision.

*Id.*

Those "symptoms" included depression. Plaintiff's arguments here thus turn on whether the ALJ was legally authorized to discount her testimony and medical evidence about that as well as her other ailments. Again, this Court's review is limited to whether he assessed the medical evidence and made his credibility determinations within the above-cited legal parameters.[2] Shellman must show that no substantial evidence supports his conclusions that:

> (a) she retains enough "functional capacity to perform the full range of light work";
>
> (b) "jobs exist in the national economy for an individual with [her] age, education, work experience, and [RFC]"; and
>
> (c) she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."

Doc. 12 at 32.

---

[2] The ALJ must address weight and credibility issues using defined criteria, *see* 20 CFR §§ 404.1520(a)(4) (five-step process); 416.920(a)(4) (same); 404.1527(c) (weighing medical opinions); 416.927(c) (same); 404.1529 (credibility); 2416.929 (same), *Harlan v. Astrue*, 2013 WL 470489 at * 4 (10th Cir. Feb. 8, 2013), but he is free to accord more or less weight to any medical opinion if there is good cause to do so. *See Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991).

8

Shellman raises what she insists are several remand-worthy errors on points (a) and (c) above, from what is an otherwise comprehensive ALJ ruling. Doc. 12 at 23-30. But she also points to depression-ailment evidence that she tendered to the Appeals Council (the appellate body to which such claimants *administratively* appeal). That body, she contends, was required to evaluate the entire record, including new evidence, yet failed to do so, thus warranting remand on those grounds alone. Docs. 14 & 21.

The Commissioner agrees on that requirement yet responds -- and plaintiff agrees -- that a remand is not necessary where that evidence would not change the outcome. Doc. 20 at 4-5 (SSA's brief); doc. 21 at 2 (plaintiff's reply brief). But Shellman says that her new evidence would alter the outcome. Doc. 21 at 2.

To be sure, the ALJ digested a thick layer of medical evidence on Shellman's mental health incapacity claim -- her depression. He reviewed Dr. David Deuser's February 21, 2012 report on her symptoms of depression and panic attacks. Doc. 12 at 30. Dueser, he

noted, "opined [that] claimant had marked limitations in activities of daily living; slight limitation in maintaining social functioning; often deficiencies of concentration, persistence, or pace; and repeated episodes of decompensation (Ex. 19F)." *Id.* But the ALJ gave this opinion "little weight" because, *inter alia*, Deuser rated Shellman's GAF score at 60,³ which does not indicate Listing 12.04 symptoms, and

---

³ As another court explains, the GAF

> is a subjective determination that represents the clinician's judgment of the individual's overall level of functioning. *Wesley v. Comm'r of Soc. Sec.*, No. 99–1226, 2000 WL 191664, at *3 (6th Cir. 2000). Failure to reference a GAF score is not, standing alone, sufficient ground to reverse a disability determination. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002). An assessment of a GAF score of *50 or below* can indicate serious mental impairments in functioning. *McCloud v. Barnhart*, 166 Fed.Appx. 410, 418 (11th Cir. 2006) (citing the American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994)). For any GAF score in the medical record revealing possible serious mental impairments, the ALJ should determine what weight, if any, to give that particular score. *Id.* However, the GAF scale "'does not have a direct correlation to the severity requirements in [the] mental disorders listings.'" *Nye v. Commissioner of Social Sec.*, 524 Fed.Appx. 538 (11th Cir. 2013). Therefore, the ALJ is not required to rely on a GAF score in making his ultimate disability determination. *Luterman v. Commissioner*, 518 Fed.Appx. 683, 690 (11th Cir. 2013).

*Sanders v. Astrue*, 974 F. Supp. 2d 1316, 1319-20 (N.D. Ala. 2013) (emphasis added), quoted in *Carter v. Colvin*, 2016 WL 3703051 at * 6 n. 8 (S.D. Ga. July 7, 2016). A GAF score is not all that dispositive. In fact, some courts have upheld an ALJ's *rejection* of disability medical opinions based on a low GAF socre:

> Doney also contends that the ALJ failed to set forth clear and convincing reasons for rejecting her treating psychologist's assignment of her Global Assessment of Functioning ("GAF") score. This court, however, has recognized

there was no evidence that she suffered repeated episodes of decompensation.[4] *Id.* The ALJ also reviewed plaintiff's Gateway Behavioral Health treatment records and noted that she was receiving individual therapy and "making good progress" at that. Doc. 12 at 30. He then evaluated a "psychological consultative examination performed by Dr. Athur Hartzell," whose "diagnosis was major depressive disorder and cognitive disorder NOS (sedated due to medication)." *Id.* The ALJ found significant Hartzell's opinion that

---

that "[t]he Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [the Social Security Administration's] mental disorders listings.'" *McFarland v. Astrue*, 288 Fed. Appx. 357, 359 (9th Cir. 2008) (some alterations in McFarland) (quoting 65 Fed. Reg. 50,746, 50,765 (Aug. 21, 2000)). We therefore hold that it was not error for the ALJ to disregard Doney's GAF score.

*Doney v. Astrue*, 485 F. App'x 163, 165 (9th Cir. 2012); *see also Morning v. Astrue*, 2013 WL 257412 at * 10 (C.D. Cal. Jan. 23, 2013).

[4] "Listing 12.04 relates to major depressive disorder ('MDR') and requires an applicant to meet either paragraphs A and B or paragraph C of the Listing. Listing 12.04 impairments are so severe that they prevent all gainful activity (20 C.F.R. § 404.1525), and once a claimant's impairment satisfies Listing 12.04 requirements for at least a year she is deemed disabled without further assessment (20 C.F.R. § 404.1520(a)(4)(iii))." *Albertson v. Astrue*, 2011 WL 3020999 at * 2 (D.S.C. July 22, 2011). SSA Listing 12.04(B) covers mental impairments, and they "must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of an extended duration." *Primmer v. Comm'r of Soc. Sec.*, 2015 WL 9474691 at * 2 (S.D. Ohio Dec. 29, 2015).

Shellman nevertheless was capable of understanding and remembering instructions and could interact with others "but would have marked difficulty in any job requiring" routine public interaction, and "moderate difficulty adapting to the stress of a typical work environment." *Id.*

Finally, although he was not clear on the ailment to which he referred, the ALJ gave "little weight" to the opinion evidence from State Agency Medical Consultants because "they did not have the opportunity to review the additional medical evidence that was submitted after their determinations." Doc 12 at 30 (citing doc. 12-2 at 64-84, covering 2004-2014 medical assessments); *see also* doc. 12-2 at 70 (2005 medical doctor's opinion that "clmt capable of work effort w/mild restrictions only.").[5] Also, as noted above, the ALJ doubted Shellman's credibility.[6]

---

[5] Note that an ALJ need not discuss each 20 CFR § 404.1527(d)(2) factor, but need only be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Bussell v. Astrue*, 463 F. App'x 779, 782 (10th Cir. 2012) (quotes and cite omitted).

[6] When a plaintiff attempts to establish disability through her own testimony concerning pain or other subjective symptoms, she "must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to

*Id.* at 30-31.

There is much to support the SSA's insistence that the ALJ's ruling be affirmed here. *Gonzales v. Colvin*, 515 F. App'x 716, 718-19 (10th Cir. 2013) (substantial evidence supported ALJ's acceptance and rejection of medical opinion on back-pain and depression-based SSI claim). After the ALJ issued his opinion, however, plaintiff tendered additional evidence for the SSA's Appeal Council to consider. Doc. 12-7 at 143-151. The Appeals Council responded:

> We also looked at the medical statement dated December 2014 from Karen Harris, LCSW [Licensed Clinical Social Worker] and David Deuser, M.D. The [ALJ] decided your case through March 6, 2014. This new information *is about a later time.* Therefore, it does not affect the decision about whether you were disabled beginning on or after March 6, 2014.

Doc. 12 at 12 (emphasis added).

Shellman says the Council erred. Doc. 14 at 18-21. The post-decision evidence in fact did pertain to the pre-ALJ-decision

---

the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *Hernandez v. Comm'r of Soc. Sec.*, 523 F. App'x 655, 656 (11th Cir. 2013). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "After considering a claimant's [subjective] complaints . . . the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

period.  The Commissioner *agrees* but argues no prejudice -- that even if the Appeals Council did consider that additional evidence, it would have reached the same "appeal denied" result.  Doc. 20 at 4-5.

The new evidence must be assessed in light of that no-prejudice (hence, materiality) contention, which is embodied in the judicial review statute, 42 U.S.C. § 405(g).  That statute authorizes remand to hear additional evidence upon a showing that the new evidence "is material and that there is good cause for the failure to incorporate [it] into the record in a prior proceeding."[7]  *Ingram v. Comm'r of Soc. Sec.*

---

[7]  In pertinent part that statute provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may *at any time* order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that *there is new evidence which is material* and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.

42 U.S.C. § 405(g) (emphasis added).

*Admin.*, 496 F.3rd 1253, 1261 (11th Cir. 2007), quoted in *Daniels v. Colvin*, 2014 WL 4783019 at * 9 (N.D. Fla. Sept. 24, 2014); *see also id.* ("[I]n a sentence six remand the district court must determine that there is new and material evidence and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."); *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (remand because the new evidence, if accepted, may warrant the ALJ's acceptance of pain allegations and affect work capability).

The ALJ issued his ruling on March 6, 2014. Doc. 12 at 33. Shellman's December 9, 2014 administrative "Appeal Brief" to the Appeals Council proffered the new evidence argued here -- the Deuser/Harris letter.[8] Again, there is no dispute that Shellman timely presented it and that the Council misinterpreted its time-root, so she meets the cause requirement for § 405(g) remand.

---

[8] Shellman's brief before the Appeals Council claims to have attached it. Doc. 12-7 at 144 ("Attached hereto and submitted herewith as a new exhibit is an updated medical statement signed by both treating psychiatrist Dr. David S. Dueser, M.D., and [LCSW] Karen Virginia Harris."). But it is not. Similarly, Shellman's initial brief here cites it as "Exhibit A," doc. 14 at 19, but it is not there, either. Months later, she evidently noticed the omission and filed it in this Court's record. Doc. 19. The Court presumes that it was before the Council, and the SSA raises no dispute on that score.

That leaves the materiality (whether it would have made a difference) leg. The SSA does not challenge Shellman's summary of it:

> Ms. Harris stated that Shellman had been a "patient for over 4 years," was "seen regularly for severe depression and anxiety," and "that these conditions *have persisted at a debilitating level through these years.*" Ms. Harris explained that Shellman's depression severely restricted her activities daily. . . . Shellman's treatment records show that she lacks energy, has feelings of helplessness, and low self-esteem. She noted to have lost interest in all activities and at times had suicidal thoughts. Ms. Harris explained that Shellman had difficulty with sleep for many years and was sleepy for most of the day due to her inability to sleep at night. Ms. Harris stated, "Because of this aspect of her depression, her attention span is lacking, and her ability to sustain concentration is very poor." Ms. Harris indicated that Shellman was extremely labile in their sessions and frequently cried. Ms. Harris stated, "Even on relatively good days, when she starts off comparatively hopeful, she will break down in tears with disturbing frequency." Ms. Harris indicated that Shellman was subject to frequent panic attacks and . . . that her anxiety and lability make her "unable to focus for very long on any subject." Ms. Harris stated, "Because of these conditions, which are well documented in the treatment records, Ms. Shellman has marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration. These findings are based on our having spent much time together with Ms. Shellman in treatment sessions over a period of years."

Doc. 14 at 19-20 (emphasis added); *see also* doc. 19 at 2 (the letter's penultimate paragraph: "In summary Patrice Shellman suffers from a *long-standing* major depressive disorder. Her symptoms include

anhedonia, sleep disturbance, feelings of worthlessness, very low energy, easy distractibility, difficulty concentrating, and, at times, thoughts of suicide. She keeps to herself nearly all the time.") (emphasis added).

This evidence -- a "long-standing major depressive disorder" that "persisted for *years*" -- was material. It has been Shellman's burden to demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period *of not less than 12 months*...." 42 U.S.C. § 423(d)(1)(A) (emphasis added). Her physical or mental impairment must be so severe that she is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The ALJ already ruled that she cannot do her past work, and this evidence goes directly to whether she can perform "any other kind of substantial work" -- which is what the ALJ (after extensive evaluation of her "depression"

and other evidence) determined that she in fact could do. And, as noted above, the ALJ himself had rejected a medical opinion because of later medical evidence (it rendered the opinion stale), doc. 12 at 30, thus validating the obverse side of that evidentiary coin here.

Finally, the Commissioner's brief here merely supplies a *post-hoc* rationale for ignoring it by contending that it is "inconsistent with [Shellman's] mental health treatment records." Doc. 20 at 6. That sort of evidentiary reconciliation is for the Appeals Council to decide in determining whether to further remand to the ALJ. The ALJ, it should not be forgotten, spent a considerable amount of ink addressing the depression issue (doc. 12 at 30-31), and that's not surprising because of the very nature of that ailment: It can be episodic, which means the evidence must not be cherry-picked.[9] Such evidence reweighing is properly rooted in the ALJ's fact-finding heartland, not a lawyer's response brief.

---

[9] Major depressive "affect" disorders (i.e., non-psychotic disorders) are also episodic. Kubitschek & Dubin, SOC. SEC. DIS. LAW & PROC. IN FED. CT. § 5:25 (2016 ed.). Hence, it is improper to cherry-pick a "file to locate a single treatment note that purportedly undermines [a doctor's] overall assessment of [a claimant's] functional limitations, [and doing so demonstrates] a fundamental, but regrettably all-too-common, misunderstanding of mental illness." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011)).

Because Shellman has shown cause (the SSA admits procedural error) and materiality, remand is warranted. In light of that, and in the interests of judicial economy, the Council should also address the well-supported vision and respiratory debilitation arguments illuminated in Shellman's Reply Brief, doc. 21 at 7-10.

## IV. CONCLUSION

Courts should not affirm SSA rulings that are unclear or require speculation. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Davenport v. Colvin*, 2015 WL 7769684 at * 3 (E.D. Cal. Dec. 3, 2015) (quotes and cite omitted). A remand under 42 U.S.C. § 405(g) (with the Clerk directed to enter a separate judgment pursuant to the Fed. R. Civ. P. 58) is warranted because the SSA's misstep rendered its final decision uncertain. *See Reed v. Colvin*, 2016 WL 3753217 at * 1 (D.S.C. July 14, 2016). On remand, the Commissioner must consider the new mental health evidence and is **DIRECTED** to address the vision and respiratory arguments illuminated in Shellman's Reply Brief, doc. 21 at 7-10. In sum, this case must be **REMANDED** with the foregoing instructions.

**SO REPORTED AND RECOMMENDED**, this  1st  day of August, 2016.

*[signature: S. R. Smith]*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA